**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| **UNITED STATES OF AMERICA,**<br><br>v.<br><br>**LIZAMARIE RIVERA-GARCÍA**<br>Defendant. | Crim. No. 25-318 (CVR) |

## REPORT AND RECOMMENDATION

On July 10, 2025, Defendant Lizamarie Rivera-García was charged in a five-count indictment of crimes against minors, namely for sex trafficking, coercion and enticement, transportation with intent to engage in criminal sexual activity, and transfer of obscene material in violation of 18 U.S.C. §§ 1591(a)(1)(b)(2) and (c), 2422(b), 2423(a) and 1470, respectively. Docket No. 3. Defendant filed a motion to suppress and/or *in limine* at Docket No. 43. The Government opposed at Docket No. 47. The matter was referred to me for a hearing and Report and Recommendation. Docket No. 38. An evidentiary hearing was held on October 1, 2026. Docket No. 60. The Government presented the testimony of Homeland Security Investigations ("HSI") Special Agent Alek Pacheco. Defendant did not call any witnesses. Documentary evidence was admitted and marked as Government Exhibits 1-4 and Defendant Exhibit A. See Docket No. 58. Furthermore, oral arguments as to Defendant's motion *in limine* were heard. Not having been able to specify what evidence she seeks to have the Court rule should not be presented to the jury, I informed Defendant that I would be recommending that the motion *in limine* be denied without prejudice. Defendant agreed. See Transcript of the October 1, 2026, Evidentiary Hearing at Docket No. 60 ("Tr.") at 7-12. After carefully considering the evidence and arguments, the undersigned recommends that Defendant's motion to suppress be **DENIED**.

### I. Factual Background

The following account is drawn from the credible evidence received at the evidentiary hearing.

In the early morning hours of July 14, 2025, HSI agents drove to Defendant's gated community to arrest Defendant at her residence. Tr. 16 ¶¶ 3-9, 20 ¶¶ 3-12. Upon arrival, agents saw Defendant's husband, Mr. Félix Guzmán, leaving the residence and inquired about the whereabouts of Defendant. Id. at 22 ¶¶ 4-22. Mr. Guzmán informed the agents that Defendant was not there because she had gone to the gym. Id. at 22 ¶¶ 24-25, 23 ¶ 1. Mr. Guzmán called Defendant and told her that she needed to return to the residence. Id. at 23 ¶¶ 3-10. When Defendant arrived, she exited the vehicle and stood next to her husband. Id. at 23 ¶¶ 17-21. Defendant was carrying a water bottle and a cellphone in her hands. Id. at 24 ¶¶ 4-5, 35 ¶¶ 15-24. After agents explained to Defendant that she would be arrested, Defendant handed over her property (i.e., the water bottle and cellphone) to her husband, and she was placed under arrest. Id. at 24 ¶¶ 8-12. Defendant was handcuffed and placed in the vehicle of law enforcement, and Mr. Guzmán was allowed to approach the car and pray with her. Id. at 24 ¶¶ 14-23, 36 ¶¶ 10-12. The door of the vehicle was then closed, and the arresting agent and SA Pacheco approached Mr. Guzmán to explain the booking process and requested Defendant's cellphone. Id. at 25 ¶¶ 2-8, 43 ¶¶ 2-16. Mr. Guzmán handed the cellphone to the agents. Id. at 25 ¶¶ 9-14, 36 ¶¶ 13-23, 38 ¶¶ 13-15. A chain of custody form or receipt was prepared for the seizure of Defendant's cellphone and given to Mr. Guzmán. Id. at 28 ¶¶ 20-25; Defendant Exhibit A. The seized cellphone belongs to Defendant and agents knew that the cellphone at issue was a personal phone of Defendant. Id. at 46 ¶¶ 7-9, 47 ¶¶ 7-9. Agents were at the arresting site for approximately 20 minutes. Id. at 25 ¶¶ 17-20. HSI agents later sought and obtained a search warrant for the cellphone. Government Exhibit 1. An extraction of digital evidence from the cellphone occurred only after the issuance of the search warrant.

## II. Discussion

The issue before the Court is a very narrow one. Defendant posits that because she had given her cellphone to Mr. Guzmán after arriving to her residence and before her arrest, the phone was not within her immediate control at the time of the arrest and could not be seized without a warrant. Defendant timidly suggests that Mr. Guzmán was coerced to give the agents Defendant's cellphone and argues that any evidence seized from the cellphone upon execution of the warrant would be fruit of the poisonous tree and should be suppressed. The Government argues that there is nothing there and I agree.

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. CONST. amend. IV. Accordingly, searches and seizures should be conducted only after acquiring a warrant supported by probable cause. Id. "In the absence of a warrant, a search is reasonable only if it falls within a specific exception to the warrant requirement." Riley v. California, 573 U.S. 373, 382 (2014) (citations omitted). One widely recognized exception is a search incident to arrest. United States v. Robinson, 414 U.S. 218 (1973); United States v. Pérez, 89 F.4th 247, 250 (1st Cir. 2023).

The warrant exception of the search incident to arrest is cemented on two principles: it is reasonable for an arresting officer to search the arrested person to offset any security or flight risks and to prevent the concealment or destruction of evidence. Chimel v. California, 395 U.S. 752, 762-763 (1969); Arizona v. Gant, 556 U.S. 332, 338 (2009) (citing Robinson 414 U.S. 230-234 and Chimel, 395 U.S. at 763). It is thus well settled that an arresting officer may, incident to executing an arrest, search the person of the arrestee as well as the area within the immediate control of the arrestee for any weapons or evidence of a crime. Chimel, 395 U.S. at 763; Robinson, 414 U.S. at 224. Law enforcement's authority to search the person of the arrestee at the time of the arrest is uncontroversial. Robinson, 414 U.S. at 225 (string citations omitted); 3 W.R. LaFave, Search and Seizure ¶ 5.2(b) (5th ed. 2012) ("[N]o one questions the right, without a search warrant to search the person after a valid arrest."). What constitutes the area within the "immediate control" of the arrestee for purposes of applying the exception to the warrant requirement has been the subject of more debate. In Chimel this was described as the "area from within which [arrestee] might gain possession or a weapon or destructible evidence." Chimel, 395 U.S. at 763. Nonetheless, the First Circuit in United States v. Pérez, 89 F.4th 247, 256 (1st Cir. 2023), quoting United States v. Chadwick, 433 U.S. 1, 15 (1977), has recently described the requirement as "personal property […] immediately associated with the person of the arrestee," which is consistent with cases that have found that it is not necessary that the arrestee might gain possession of a weapon or destructible evidence to seize the property, although a warrant may be required to conduct a later search of that property. See United States v. Place, 462 U.S. 696, 705-06 (1983) (authority to seize luggage suspected of carrying narcotics); Chadwick, 433 U.S. at 13-16 (authority to seize "double-locked, 200-pound footlocker" associated with the arrestee but not to search without a warrant).

Ultimately, the inquiry requires, on the one hand, that we assess the degree to which any search intrudes upon an individual's privacy, and on the other, the degree to which the search is needed to further a legitimate governmental interest. Riley, 573 U.S. at 385, 401 (quotations and citations omitted) (holding that officers executing an arrest must generally secure a warrant before conducting a search for digital data in a cellphone seized from an arrestee). And the "standards traditionally governing a search incident to arrest are not … commuted to the stricter Terry standards." Maryland v. King, 569 U.S. 435, 456 (2013) (quoting Robinson, 414 U.S. at 234); Robinson, 414 U.S. at 234-35 ("A police officer's determination as to how and where to search the person of a suspect whom he has arrested is necessarily a quick ad hoc judgment which the Fourth Amendment does not require to be broken down in each instance into an analysis of each step in the search. The authority to search the person incident to a lawful custodial arrest, while based upon the need to disarm and to discover evidence, does not depend on what a court may later decide was the probability in a particular arrest situation that weapons or evidence would in fact be found upon the person of the suspect. A custodial arrest of a suspect based on probable cause is a reasonable intrusion under the Fourth Amendment; that intrusion being lawful, a search incident to the arrest requires no additional justification."). "Robinson thus rejected the contention that a more limited pat-down -- such as the limited frisk permitted in Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968) -- was all that was allowed for a search incident to the arrest." Pérez, 89 F.4th at 252.

HSI agents went to Defendant's residence to execute an arrest warrant. Therefore, at the time of her arrest, Defendant had a diminished expectation of privacy. United States v. DeLeo, 422 F.2d 487, 493 (1st Cir. 1970) ("While the legal arrest of a person should not destroy the privacy of his premises, it does—for at least a reasonable time and to a reasonable extent—take his own privacy out of the realm of protection from police interest in weapons, means of escape, and evidence.") (quoted in approval in United States v. Edwards, 415 U.S. 800, 808-809 (1974)). HSI agents observed Defendant leave her car with her cellphone in hand. Rather than arresting her at the threshold, agents exercised discretion by allowing Defendant an opportunity to approach her husband. Unted States v. Nascimento, 491 F.3d 45, 50-51 (1st Cir. 2007) (officers should be given reasonable latitude "coping with exigent circumstances"; allowing individual at the arrest to go into a room to dress and seizing gun from the room they would not have otherwise searched

without a warrant was not a Fourth Amendment violation). The agents saw when Defendant gave Mr. Guzmán her property, including her cellphone, before being handcuffed. And, naturally, the agents also knew that they were arresting Defendant for sex trafficking, coercion and enticement, transportation with intent to engage in criminal sexual activity, and transfer of obscene material to a minor. In today's world, there can be no serious dispute that the cellphone of a defendant charged with the foregoing criminal conduct would likely contain evidence of the crimes. Tr. at 28 ¶¶ 16-19 (testifying that the cellphone was seized to safeguard evidence).

Defendant's challenge to the seizure of the phone immediately after her arrest is defeated by the expressions made by the U.S. Supreme Court in Chadwick, as discussed and applied by the First Circuit in Pérez: agents have authority to seize incident to the arrest "personal property […] immediately associated with the person of the arrestee." The First Circuit in Pérez addressed "where the line should be drawn in searches incident to arrest when it comes to things an arrestee carries at the time of the arrest." Pérez, 89 F.4th at 256-57. In that case, the defendant was wearing a backpack at the time when he was intervened and chased by law enforcement. Id. at 249. After being caught and pinned to the ground by one of the arresting agents, the agent removed the defendant's backpack from the defendant, and the defendant was handcuffed by another agent. Id. The arresting agent then opened and searched the backpack, but the defendant was not in reaching distance of the backpack at the time that the search took place. Id. The issue before the First Circuit in Pérez was whether decisions of the U.S. Supreme Court after Robinson, had called into question the First Circuit decision in United States v. Eatherton, 519 F.2d 603 (1st Cir. 1975), where the First Circuit held that the search of the interior of a defendant's briefcase, after the defendant dropped his briefcase in compliance with the instructions of law enforcement and had been handcuffed and placed in the back of the vehicle of law enforcement, was reasonable. Id. at 251.[1] The First Circuit in Pérez found that the facts there were essentially the same as those posed in Eatherton, which are also the same as those posed here— whether law enforcement could seize (and, in the case of Pérez and Eatherton, search) the arrestee's property despite the fact that the property was not on the arrestee's person or in his immediate control at the time when the defendant was handcuffed. Id. at 254. The First Circuit held in Pérez that its decision in Eatherton

[1] See 3 W.R. LaFave at ¶ 5.5(a) (most of the pre-Chadwick cases seemed to rest upon the assumption that a carried container is within the defendant's control if it was being carried by the defendant at the time of arrest).

was controlling and good law. Id. at 261. And that law enforcement could indeed seize the arrestee's property even though it was not within the arrestee's immediate control.

In this case, as in Pérez, Defendant's cellphone, which the agents saw Defendant carried in her hand right before her arrest, was personal property "immediately associated with the person of the arrestee." And Defendant's reliance on Riley is of no consequence. Recall that the U.S. Supreme Court's decision in Riley was that law enforcement could not search a cellphone seized incident to an arrest without obtaining a search warrant. Riley, 573 U.S. 373. The reasoning in Riley was that the overwhelming amount of private information that can exist digitally in a cellphone deserves additional protection. Indeed, the U.S. Supreme Court in Riley assumed without deciding that arresting officers are allowed to seize and secure cellphones incident to arrest to prevent destruction of evidence while seeking a warrant. Riley, 573 U.S. at 388. Here, the HSI agents did not search Defendant's cellphone without a warrant. They merely secured it to safeguard from destruction of evidence prior to being able to obtain a warrant. See Illinois v. McArthur, 531 U.S. 326, 334 (2001) ("We have found no case in which this Court has held unlawful a temporary seizure that was supported by probable cause and was designed to prevent the loss of evidence while the police diligently obtained a warrant in a reasonable period of time."); Place, 462 U.S. at 705 (if there is reasonable suspicion, "seizure may be made after the owner has relinquished control of the property to a third party or [ ] from the immediate custody and control of the owner."); United States v. Olivera, 2022 WL 3334607, *9 (D.P.R. Aug. 12, 2022) (assuming without deciding that seizure of phone incident to arrest is proper). Ultimately, the HSI agents at the arrest did exactly what was required by the U.S. Supreme Court in Riley— they seized, secured and obtained a warrant prior to searching the cellphone. See United States v. Henry, 827 F.3d 16, 28 (1st Cir. 2016) (Riley not implicated when cellphones are seized to prevent destruction of evidence and a warrant is obtained before searching the phones).

The analysis could end here. However, the plain view doctrine would have also allowed the HSI agents to seize Defendant's cellphone pending a warrant. As originally conceived by the U.S. Supreme Court in Coolidge v. New Hampshire, 403 U.S. 443 (1971), the plain view doctrine required that the officer conducting the search be lawfully at the place where the evidence was seen, that the evidence be discovered inadvertently, and that the incriminating nature of the evidence be immediately apparent. Texas v. Brown, 460 U.S. 730, 737 (1983) (discussing the

Coolidge requirements). These requirements were later modified in Horton, which established that the evidence recovered in plain view did not have to be inadvertently discovered. Horton v. California, 496 U.S. 128, 130 (1990). As more recently described by the First Circuit, the doctrine "permits the warrantless seizure of an item if the officer is lawfully present in a position from which the item is clearly visible, there is probable cause to seize the item, and the officer has a lawful right of access to the item itself." United States v. Hernández-Mieses, 931 F.3d 134, 140 (1st Cir. 2019) (quoting United States v. Gamache, 792 F.3d 194, 199 (1st Cir. 2015)). The first element of the test is straightforward and easy to apply. The second element of this test— that there be probable cause to seize the item— has been interpreted as requiring that the incriminatory nature of the seized items be immediately apparent. See United States v. Keleher, 516 F.Supp.3d 162, 167-168 (D.P.R. Jan. 28, 2021) (citations omitted) (discussing three tests articulated by the First Circuit to apply the plain view doctrine); United States v. Mercedes-Abreu, 2020 WL 1030727, at *4 (D.P.R. Feb. 28, 2020). And the third element— that the officer has a lawful right of access to seized property— is said to be met "when the officers have legal access to the seized property while acting pursuant to some exception to the Warrants clause." Brown, 460 U.S. at 738.

At the time of the seizure, HSI agents were executing an arrest warrant outside of Defendant's residence and there is no evidence of trespassing. Hernández-Mieses, 931 F.3d at 140. As testified during the hearing, the agents saw Defendant carrying the cellphone when she left the car and when she subsequently transferred it to Mr. Guzmán. And, given the charges that prompted Defendant's arrest, it is reasonable to conclude that the agents' training and experience would have certainly led them to believe that Defendant's cellphone would contain incriminatory evidence. See Keleher, 516 F.Supp.3d at 172-73 (we look at the information known to the officer at the time of the seizure); Brown, 460 U.S. at 742-43 (officer's training and experience relevant to determine whether the incriminating nature of the evidence is apparent); Hernández-Mieses, 931 F.3d at 140-141 (incriminating nature of seized items could be surmised from experience that phones are common tools for crime under investigation); Henry, 827 F.3d at 21, 28 (people involved in sex trafficking often use cellphones). As such, HIS agents' seizure of Defendant's cellphone was also lawful under the plain view doctrine.

## III. Conclusion

For the reasons discussed, the undersigned recommends that Defendant's motion at Docket No. 43 be **DENIED**.

**IT IS SO RECOMMENDED.**

This Report and Recommendation is issued pursuant to 28 U.S.C. §636(b)(1) and Rule 72(d) of the Local Rules of this District Court. Pursuant to Local Rule 72(d), the parties have fourteen (14) days to file any objections to this Report and Recommendation. Failure to file timely and specific objections may be deemed waived by the District Court and claims not preserved by objections may be precluded on appeal. See Thomas v. Arn, 474 U.S. 140, 155 (1985); United States v. Valencia-Copete, 792 F.2d 4, 6 (1st Cir. 1986); Davet v. Maccarone, 973 F.2d 22, 30-31 (1st Cir. 1992); Henley Drilling Co. v. McGee, 36 F.3d 143, 150 (1st Cir. 1994).

In San Juan, Puerto Rico, this 10th day of November 2026.

s/Giselle López-Soler
GISELLE LÓPEZ-SOLER
United States Magistrate Judge